## SIMONDS *v.* CLAPP.

If an agent, authorized to make a particular contract, make one in different terms, but of the same legal effect, or differing only in securing to his principal additional benefits, the latter is bound by it.

If a judge in his charge, state to the jury what would be the legal effect of a contract different from the one proved, and there is no reason to suppose the jury to have been misled, or the party in any way prejudiced by the remark, the verdict will not for that cause be set aside.

If one sues for a reward offered for a certain service, and it is set up in the defence, that in performing it he was but the servant of another, he may give in evidence his own acts and declarations, his consultations with others, and the advice given on such occasions, to show that he was acting on his own behalf.

Simonds *v.* Clapp.

ASSUMPSIT to recover $200 ; founded upon an advertisement, purporting to be published by the defendant, and offering a reward of $200 for the arrest of a person who had escaped from his custody.

The first count alleged, " that one William Seal, on the night of the 15th day of June A. D. 1841, having escaped from the custody of the said Clapp at Concord, N. H., as the said Clapp caused to be reported and published, he the said Clapp on the 16th day of June A. D. 1841, at said Concord, to wit, at said Amherst, in consideration that the plaintiff or any other person would arrest the said Seal, promised that he would pay and satisfy unto the person or persons so arresting him, the sum of $200, and the plaintiff avers that relying upon the faithful performance of said promise of said Clapp so made as aforesaid, he on the 17th day of June A. D. 1841, at Warner in the county of Merrimack, did arrest said Seal, so that he came again into the custody of said Clapp ; whereby the said Clapp ought, according to his promise aforesaid, to have paid the plaintiff the said sum of $200.

The second count alleges " that said Clapp at Concord in the county of Merrimack, to wit, at Amherst aforesaid, on the 16th day of June A. D. 1841, did promise to pay another sum of $200 to any person who would arrest said Seal, whom said Clapp averred to have escaped from his custody, on the night of the 15th day of June A. D. 1841, at said Concord ; and the plaintiff, relying on the said promise of the said Clapp so made as aforesaid, at Concord in our county of Merrimack, on the 17th day of June A. D. 1841, did arrest the said Seal, and did return him to the custody of the said Clapp, in consideration whereof the said Clapp became liable, and in consideration thereof then and there promised the plaintiff, to pay him the sum of $200 on demand.

There was a third count for work and labor done and services rendered, &c.

To support his declaration, the plaintiff offered in evidence a printed advertisement in the following words and figures : to wit,

" $200 REWARD.    Escaped from the custody of the subscriber in Concord, N. H., on the night of the 16th instant, William Seal, an Englishman by birth, 30 years of age, black long hair, black eyes, slightly pitted in the face by the small-pox, about 5 feet 7 inches high, dressed in dark frock and pantaloons, both wrists chafed with the hand-cuffs ; the above reward will be paid for the arrest of the said Seal.

DERASTUS CLARK.

Concord, June 16, 1841."

And evidence tending to show that the said advertisement was made and published by one Ephraim Hutchins, as the agent, and by the directions and authority of the said Clapp.    To this evidence the defendant objected, on the ground of a variance between the contract set out in the declaration, and that contained in the advertisement. The court overruled the objection and admitted it.    The plaintiff then offered further evidence tending to show, that he arrested the said Seal at Warner on the 17th day of June, and carried him to Concord, where the said Clapp received him, but refused to pay the plaintiff the said sum of $200.

The defendant then offered evidence tending to prove, that the authority was to offer the reward " to the person who shall give information which shall lead to the arrest of said Seal," but that Hutchins wrote it as in the advertisement, " for the arrest of said Seal ;" and contended, that inasmuch as Hutchins did not make it according to the authority given him by Clapp, it did not bind Clapp, and he was not liable.

The defendant further contended, that if liable at all, he was liable to one George W. Herrick, and not to the plaintiff, who acted in whatever he did as the agent of

Simonds *v.* Clapp.

said Herrick; and offered evidence tending to prove, that Herrick was the driver of the mail stage between Concord and New-London, passing through Hopkinton and Warner; that on the morning of the 16th of June he took several of the advertisements at Concord, and carried them to New-London, and when returning the next morning, he stopped to change the mail at Warner, and when going into the post-office, a man passed out, and he inquired of those in the post-office if any of them knew him, and upon being answered in the negative, he took from his hat the advertisements, gave one to the plaintiff, and others to two or three other persons present, and asked if they described the person who had just stepped out; and on being answered in the affirmative, asked the plaintiff, who was a deputy sheriff, if he dared to arrest the man upon that, and expressed his own belief that he was the right person; that thereupon the plaintiff stepped out and pursued and took the man, and brought him back; that the man denied that he was the person described in the advertisement, and showed his wrists, that they were not galled; that Herrick reiterated his belief that he was the person; that there was much conversation by Herrick, the plaintiff, and others, as to his identity, and the propriety of detaining and carrying him to Concord. And further to show that the plaintiff considered and represented himself as the agent of Herrick, and as acting for him and not for himself and upon his own responsibility, the defendant offered in evidence the acts and declarations of the plaintiff at Hill's Bridge and at Hopkinton, while on his way with the prisoner to Concord, and after he arrived at Concord, neither Herrick nor the defendant being present.

To rebut this evidence, the plaintiff offered evidence of other acts and declarations of his own at Warner while Herrick was present, and immediately after Herrick left, concerning the identity of the prisoner and the expedi-

ency of taking him to Concord, and of thus taking the risk of the consequences, if he should turn out not to be the person, and the advice which Major George gave him upon this question; and also his calling upon Henry B. Chase, Esq., after he had started with him, and before he arrived at Hill's Bridge or Hopkinton, for legal advice as to his liabilities in case the prisoner should not be the person described in the advertisement, and the advice given him by Mr. Chase; it all being the same forenoon. To the admission of which the defendant objected; but the court overruled the objection and admitted it, on the ground that it was part of the same transaction, and the defendant having put in one part of it, the plaintiff might put in other parts to explain it.

The court instructed the jury, that if they believed that Clapp gave to Hutchins a general authority to offer the reward, without any limitations and restrictions as to the manner and form of doing it, Hutchins thereby became the general agent of Clapp for that purpose, and his acts would bind Clapp, although the paper was written differently from what Clapp expected or intended it should be. But if Clapp gave Hutchins special instructions, and Hutchins made altogether a different contract in substance, Clapp was not bound by it, and must be discharged.

If, however, Clapp gave Hutchins special instructions as to the form and manner of writing it, and Hutchins wrote substantially as Clapp directed, although not in the precise words which Clapp directed, still Clapp would be bound by it and can not avoid it, on account of a mere formal variance.

The court further remarked, that if the contract had been written as the defendant contested it should have been, payable " to the person who shall give information which shall lead to the arrest of the said Thompson," it would be difficult to see wherein the plaintiff had not

substantially complied with the terms of it on his part; for the object of Clapp being to regain possession of his prisoner, and the reward being offered as inducement to others to aid in accomplishing this object, the actual delivery of the prisoner to Clapp would seem to be giving him the best of information that would lead to the arrest of him.

But if the jury believed that the plaintiff at the request of Herrick, undertook to arrest the prisoner for him, and did so as his servant and agent, the plaintiff could not prevail in this action ; but if, on the other hand, they find that the plaintiff did arrest and deliver the prisoner to Clapp, upon his own responsibility, at his own risk, and for his own benefit, and not on account of Herrick, and it was so understood at the time by them, then if they find the advertisement was made by Clapp, the plaintiff must recover.

The jury returned a verdict for the plaintiff for the amount of the reward, and the defendant moved to set aside the verdict and for a new trial, on account of errors in the foregoing rulings and instructions of the court.

*J. U. Parker,* for the defendant.  The main question is who made the arrest, as the plaintiff himself puts it. The defendant offered evidence of the declarations of the plaintiff made at Hillsborough Bridge, at Hopkinton, and at Concord, to show that he did not arrest Seal. There can be no objection to such evidence.  The plaintiff to rebut it, put in his own acts and declarations made at an earlier period, prior to his arrival at Hopkinton.

The general rule is, that a party's own declarations in his own favor are not evidence for himself.  The declarations admitted in the case are not stated, but having been introduced to rebut the evidence of the defendant, may be presumed to have been favorable to himself.  He

should show that they were within some exception to the general rule.

It does not appear that they were against the interest of the party making them, as in *Hinkley* v. *Davis*, 6 N. H. 210. They were not admissible as part of the conversation proved by the other side, as in *Whitwell* v. *Wyer*, 11 Mass. 10. They were admitted however as part of the declarations proved by the defendant, but made at a previous time.

When a party can avail himself of his own declarations made at a time previous to those proved by the other side, they must appear to have been made at a time when he had no motive to misrepresent. *Merrill* v. *Sawyer*, 8 Pick. 397; *Gordon* v. *Shurtliff*, 8 N. H. 260. The declarations that are admissible as qualifying an act, should be contemporaneous with the performance of the act. *Sessions* v. *Little*, 9 N. H. 271; *Hadley* v. *Carter*, 8 N. H. 40; *Boyden* v. *Moore*, 11 Pick. 362.

Other part of the evidence was much more objectionable. The advice given by counsel to his client. Chase was admitted to state what advice he gave to the plaintiff on matters of law. Further than that, he introduced the advice given by Major George.

There is an objection to the ruling. There were two advertisements; one offering a reward for the arrest of Seal, and the other for information that would lead to the arrest. The instructions were to the effect that if the plaintiff complied with the last, he would be' entitled to the reward.

If the information had been given to Clapp, and he had sent an officer to make the arrest, the plaintiff would have been entitled to the reward. If the ruling was correct, the last advertisement would not have supported the two first counts in the declaration.

*Pierce*, for the plaintiff. The case finds a conversation

when Herrick returned, and that Simonds did in fact make the arrest, if the arrest were the mere act of taking. But if he had once had the prisoner under his control, and he had escaped, the plaintiff would not have been entitled. The whole was a continuous transaction, and the question is how the plaintiff was taking Seal to Concord, whether on his own account or as the servant of Herrick.

The defendant put in the plaintiff's declarations made at one stage of the proceeding, and the plaintiff himself put in others made in the progress of the same act. These must be regarded as concomitant. Greenl. Ev. 182; 1 Stark. Ev. (5 Am. Ed.) 63.

The very matter tried was the nature and quality of the act which the plaintiff was doing, whether it was his own or the act of another.

The declarations of a trader are evidence to show his intentions at the time of leaving his residence. Phil. Ev. (N. Y. Ed. 1820) 202. These declarations of the plaintiff were put in to show the capacity in which he was acting at the time in relation to the prisoner. *Gordon* v. *Shurt-liff*, 8 N. H. admits the declarations in this case. In *Ridley* v. *Gyde*, 9 Bing. 349, continuation of a conversation that had been broken off was admitted. 1 Car. & P. 621; 8 Watts 376. The case in 11 Pick. seems to be in point here.

That cited from 8 Pick. is materially different, if he had been in the act of removing the hay, his declarations would have been evidence to denote the character of the claim which he made to the goods, and of the purpose for which he removed them.

The authorities are numerous to show the admissibility of declarations accompanying an act, to show the intention of the party in performing it, and his understanding of it. *Thorndike* v. *Boston*, 1 Met. 242; *Gorham* v. *Canton*, 5 Greenl. 266; *Allen* v. *Duncan*, 11 Pick. 308; *'Davis*

v. *Spooner,* 3 Pick. 284 ; *Little* v. *Libbey,* 2 Greenl. 242 ;
5 Greenl. 396 ; 16 Mass. 108 ; 4 Greenl. 368.

As to the admission of the declarations of Chase and
George. The plaintiff might have put in the words used
by himself in his conversations with those persons, but
they would not have been intelligible without the words
of the other parties to it. Their declarations tended to
give a character to the act of the plaintiff. They related
to the reward he would secure and to the risk he would
run. Chase said " You will get $200 if he turns out to
be the man."

The case finds no more than one advertisement.

*Flanders,* for the defendant, in reply.

WOODS, J. The plaintiff's case as stated in his first
count is, that the defendant having promised a reward of
$200 in consideration that the plaintiff or any other per-
son would arrest one Seal who had escaped from the law-
ful custody of the defendant, the plaintiff arrested him
so that he came again into the custody of the defendant,
yet the defendant refused to pay the offered reward.

In his second count he alleges that the promise or offer
of the reward was to any one who would arrest the pris-
oner, and the count is in other material respects like the
first. A general count for labor follows.

To prove the offer, the plaintiff produced an advertise-
ment in which the reward was offered to be paid for the
arrest of Seal. The advertisement was published by
Ephraim Hutchins, whose authority was to offer the
reward to the person who should give information which
might lead to the arrest of Seal.

It is said by the defendant that this evidence does not
sustain the declaration, because the agent's authority not
having extended to the offer of a reward for the service
described in the advertisement, that instrument was not

the publication or act of the defendant; and that if he can be charged with any offer or any liability, it must be such an one as he intended to assume in his instructions to Mr. Hutchins.

Now .if the defendant gave a general authority to Hutchins to offer a reward for the apprehension of Seal, without limitations or instructions as to the precise conditions or the terms in which the offer should be made, it requires no argument to show that the course pursued by Hutchins, being a reasonable one and having for its plain object the desired arrest of the fugitive, was clearly within the scope of the authority conferred, and that it could make no difference whether Clapp expected his agent to pursue that particular course, or one varying in some slight particulars from it.

And even if the power conferred had been accompanied by special directions to frame the advertisement in a particular manner, and in the execution of his power he departed from the precise terms of the instructions given him, but yet pursued substantially those terms, and did not undertake to bind his principal by obligations materially different from those which he was authorized to contract in his behalf, the act must be regarded as the act of the principal, and he is bound by it.

Between the terms used in the advertisement, and the terms specially authorized by the defendant to be used, there is no appreciable difference. A party would scarcely expect to entitle himself to the offered reward, or to have complied with the condition of "arresting" the prisoner, if he did not in addition to that act, place the prisoner within the reach, or return him to the custody of the defendant. The only reasonable construction that could be given to the advertisement, would be that which should bind the person claiming its benefits, to duties at least as arduous and quite as beneficial to the defendant as those required by the offer that was more expressly authorized

by the instructions; and it did not bind the defendant on the other hand to duties in any way more onerous.

A principal can hardly escape from the contract which his agent has made, upon the plea that he has departed from his instructions, when his only departure consists in the use of different phrases, having either the same legal effect, or the effect of securing all that the contract dictated could have secured, with some additional benefits without additional risk or burden.

There can be no doubt upon the evidence, that the advertisement issued by the agent of the defendant in the defendant's name, was issued in the regular and direct pursuit of the authority delegated, and in substantial conformity with the instructions communicated.

The declaration was therefore fully sustained in this particular by the evidence offered.

The judge who tried the case made some remarks as to what the consequences would be, if the advertisement had been written in the terms directed by the defendant. Whether these were correctly indicated, we are not bound to inquire, because they related not to the case proved, but to a mere hypothesis which was not believed to exist, and of which there was no shadow of evidence. For the same reason we can not suppose that the jury were misled by the remarks, or the defendant in any manner prejudiced by them. It was not intimated that there was evidence upon which the jury could find that there was such an offer advertised, and there is no reason whatever for believing that the jury founded their verdict upon the supposition that there was one, or upon any other facts than what were regularly set up in the declaration and proved.

The next question relates to the ruling of the court below in admitting evidence of the declarations of the plaintiff, offered by himself. The defendant had given in evidence the plaintiff's declarations, made at different stages of the business of arresting and conveying to Concord,

and to the defendant's custody, the fugitive prisoner; and, to repel the force of these, the plaintiff produced evidence of other declarations and acts of his own, made and performed during the course of the same business, tending as it is said to show, that throughout the whole of it he was acting for himself and for no other person.

The plaintiff founds his right to maintain this suit upon an act of his own. He must prove that he arrested the man Seal, and carried and delivered him to the defendant's custody, or placed him within the defendant's control, according to the reasonable meaning of the terms of the advertisement. This he is at liberty to prove. But it was not the act of a moment. It consisted of a long series of consecutive acts, from the moment that he set forward at the suggestion of Herrick to make the arrest at Warner, till the transaction was brought to a close at Concord by the surrender of his prisoner. As many of these subordinate acts as are necessary to complete the proof of the principal one, he is clearly at liberty to prove.

But in the course of its prosecution, and intermingled with the constituent parts of the principal act, are various conversations with others, some of which have a tendency to impart to his proceedings the appearance of being directed by another party, and to give him the character of a mere agent or servant of that party in the transaction; and it becomes a material question whether such proceedings were so directed, and whether he was acting throughout, or at any stage of the business in fact, in subordination to Herrick, at his expense and risk, and for his benefit, or on his own behalf entirely.

In short, it becomes necessary for the plaintiff in order to make good his claim, not only to prove that he arrested and delivered up the man Seal, but to repel the force of evidence that has been adduced, that in so doing he acted only as the servant of Herrick.

It would in many cases avail a party but little to be permitted to prove his own acts, if he were to be confined to these alone, and were obliged to exhibit himself only as a speechless actor, and capable in law of communicating by visible signs only the intent and drift of his proceedings. The law has therefore allowed him in general the protection and benefit of his own words, where they accompany his acts, and indicate the option that he makes at the moment he performs them, between the various characters they are capable of wearing.

It is accordingly held, that where it is necessary in the course of a cause to inquire into the nature of a particular act, and the intention of the person who did the act, proof of what the person said at the time of doing it, is evidence for the purpose of showing its true character. Downs v. Lyman, 3 N. H. 488; 1 Greenl. Ev., sec. 108; Barker v. Clark, 4 N. H. 381; Hadley v. Carter, 8 N. H. 43; Gordon v. Shurtliff, 8 N. H. 260.

And this rule extends so far that parties may give in evidence their own declarations, where they accompany and qualify those of their acts that are material to be proved. Hadley v. Carter, 8 N. H. 43, before cited; Allen v. Duncan, 11 Pick. 308; Kenniston v. Russell, Grafton, July term, 1845.

In Allen v. Duncan, the question was, whether the plaintiff in making a payment did it in behalf of his firm, or on his own account merely. The evidence leaving it doubtful whether the obligation had been assumed by him or by the firm, he was allowed to prove the declarations which he made on paying the money, that it was his own and not that of the company. This was upon the ground that his declaration gave a character to an act otherwise equivocal, at a time when the party had an undoubted right to an option.

To the same effect is the case of Boyden v. Moore, in

the same volume, page 362, in which the plaintiff proved his own declarations and acts.

Upon reason, and upon the authority of the cases, we are bound to conclude that the plaintiff was properly permitted to give in evidence his own declarations and acts, to show that he acted for himself; and to rebut the force of the evidence that tended to show that he was the servant of another.

Of the same nature was the evidence that was introduced of the act of taking the advice of others, and of the advice that was given him on those occasions. Of itself what was said by another could have been of no relevancy to the cause. But, in the language adopted by Professor Greenleaf (1 Ev., sec. 108), "the affairs of men consist of a complication of circumstances so intimately interwoven, as to be hardly separable from each other. Each owes its birth to some preceding circumstances; and each in its turn becomes the prolific parent of others, and each during its existence has its inseparable attributes, and its kindred facts materially affecting its character, and essential to be known, in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the *res gestæ*, may always be shown to the jury along with the principal facts."

The present case shows well the significance of that rule of evidence, and its salutary importance. While engaged in the performance of the act for the reward of the successful execution of which he has brought this action, the plaintiff called to his aid the counsels of other persons. For what purpose? We think that it would be unreasonable to shut out the light which those consultations might afford in the solution of the principal question in the case. If the advice he sought appeared to be that which he followed, it would show perhaps as clearly as any other fact could show, the intention with which he prosecuted the act to which it related. If he sought and received coun-

Simonds *v.* Clapp.

sel how he might safely and effectually discharge a duty which he had assumed as the servant of Herrick, that would give one aspect to the transaction. If on the other hand, he asked and received advice about the probable identity of the party whom he had in custody; about the expediency of conveying him to Concord and the like; it showed that he doubted and deliberated, as one doubts and deliberates about an affair that he is engaged in for himself. If in the sequel, he followed the advice that he received, the fact shows that his doubts and deliberations were determined, not by referring to the antecedent instructions of an absent party whose commands he had undertaken to execute, but by counsels of the moment, and by considerations springing from the exigency of the circumstances that were the subject of the consultations.

What is said to a man or in his presence, if he assent to it either formally or by acquiescence, and by action, becomes as much the index of his intention, as if he had himself given utterance to the words. The cries of the mob were admitted in evidence in the trial of Lord Gordon, upon the ground that he was constructively present and consenting to their language, and of course a party to the designs that it indicated.

These various declarations and consultations were contemporaneous with the principal act, which commenced with the beginning of the plaintiff's purpose of making the arrest, and continued through the various stages of progress to the time that the prisoner was delivered to the defendant. The whole should be regarded as one transaction, and it is no matter in what particular stage of it the acts referred to were done.

We are therefore of the opinion that the court correctly admitted the evidence at the trial, and that the exceptions must all be overruled.

*Judgment on the verdict.*